FILED
MISSOULA, MT

2005 NOV 14 AM 11 24

PATRICK E. DUFFY
BY_____
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | | |
|---|---|---|
| LIZA ASH, individually and as Personal Representative of the Estate of Steven Ash, deceased, | ) ) ) ) | CV 04-92-M-DWM |
| Plaintiff, | ) ) | |
| vs. | ) ) | ORDER |
| STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, | ) ) ) | |
| Defendant. | ) ) | |

## I. Introduction

Plaintiff Liza Ash (Ash), individually and as Personal Representative of the estate of her deceased son, Steven Ash brings this action against her insurer, State Farm Mutual Automobile Insurance Company (State Farm) to recover uninsured motor vehicle coverage for damages arising from the death of her son. Steven Ash was kidnaped by Roxanna Shepard and shot to death in the back of her truck. Both parties have filed motions for summary judgment and request that the court determine, as a

-1-

matter of law, whether Ash's uninsured motorist policy provides coverage for her son's death.

## II. Factual Background

On July 24, 2003, Roxanna Shepard, Melvin Green, and Eli Sayler abducted Steven Ash from his home in Plains, Montana. Shepard transported Steven in her 1993 Dodge pickup truck to her home seven miles away, where he was bound and held captive. Several hours later, Steven was transported in the same truck to Corona Lake, approximately nine miles northwest of Plains. At the lake, Steven sat in the tailgate of the truck for some time until Shepard shot him in the back of the head. As Steven fell off the tailgate, Green fired a second shot at his head. Steven died as a result of his injuries. The kidnaping and murder was apparently in retaliation for Steven's alleged theft of marijuana from Shepard's drug dealing operation.

Steven's mother, Liza Ash, asserted a claim against Shepard's automobile insurer, State Farm, based on the use of Shepard's truck in the kidnaping and homicide. State Farm advised Ash that her claim would be denied because Shepard's coverage did not extend to intentional acts. Ash advised State Farm that she would pursue a claim under her own uninsured motor vehicle coverage, also issued by State Farm. Ash has three separate policies with uninsured motor vehicle limits of $25,000 each. Her uninsured motor vehicle policies provide coverage for

injuries "caused by accident arising out of the operation, maintenance or use of an uninsured motor vehicle."

### III. Analysis

#### A. Summary Judgment Standards

A party moving for summary judgment is entitled to such if the party can demonstrate "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). On a motion for summary judgment, this Court must determine whether a fair-minded trier of fact could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).

#### B. Summary of Parties' Arguments

Ash argues that Shepard's truck was the prime accessory to the crime and was the "inextricable link" to all events leading up to the murder because it was used to abduct, secret, control and transport Steven, and was the site of the shooting. Ash also focuses on the "legally entitled to recover" language in the uninsured motor vehicle policy, arguing that it creates an ambiguity with the "arising out of" language in the second sentence of the policy.

State Farm argues that the truck was not used as an accessory to the murder and the causal relationship between the truck and the murder was remote and tenuous. State Farm contends

that the application of uninsured motor vehicle coverage to these facts is beyond the reasonable contemplation of the parties.

Both Ash and State Farm agree that stacked coverage applies, Ash's murder was an "accident" as used in the uninsured motor vehicle coverage provision, and the Wendell test for interpreting whether the incident arose from the use, operation or maintenance of the truck applies.

### C.   Montana's Wendell test for injuries arising out of the use of a vehicle

In Wendell v. State Farm Mutual Automobile Ins. Co., 1999 MT 17, 293 Mont. 140, 974 P.2d 623, the Montana Supreme Court adopted an expansive test for interpreting the term "arising out of the use" in an uninsured motor vehicle policy. The test is fact intensive, and provides that "an insured's injuries 'arise out of the use' of an uninsured vehicle if the injuries originate from, or grow out of, or flow from the use of the uninsured vehicle." Wendell, ¶ 54.

In Wendell, the plaintiff was driving his car, when the defendant began following him closely in his own car, flashing his lights and honking his horn. The plaintiff pulled over, expecting to see an acquaintance, but instead the defendant left his car, approached the plaintiffs car, and punched the plaintiff in the face when he rolled down the window. The defendant and his accomplices proceeded to drag the plaintiff from his car and beat him. Id. ¶ 4. The district court granted summary judgment

in favor of the insurer, but the Montana Supreme Court reversed on appeal, holding that genuine issues of material fact existed under the newly adopted test. Id. ¶ 58. The case was remanded for further proceedings consistent with the new expansive test. Id. ¶ 59.

The Wendell Court was cognizant of the insurer's concern that the expansive test would cause uninsured motor vehicle coverage to function as general crime insurance, but felt that courts would be equipped to "distinguish those cases where the facts suggest a remote or tenuous causal relationship between an insured's injuries and the use of the uninsured vehicle from cases where the facts demonstrate that the two are inextricably linked." Id. ¶ 55. The Court pointed to several cases where courts applied the same test and held that injuries did not arise out of the use of the vehicle. In one of the cases cited in Wendell, Cannon v. Maine Bonding & Cas. Co., 639 A.2d 270, 271 (N.H. 1994), a motorist engaged the plaintiff in a "cat-and-mouse" game. When the plaintiff followed the motorist closely to get his license plate number, the motorist slammed his brakes and both cars came to a stop without touching. Id. The motorist proceeded to get out of his car, break the plaintiff's window, and punch the plaintiff in the face. Id. The New Hampshire Supreme Court applied the expansive test, and found that at the time of the assault, the motorist was no longer using his vehicle

or acting as a motorist, therefore coverage was denied. Id.

The Wendell Court also quoted language from another jurisdiction applying the expansive test. In Wausau Underwriters Ins. Co. v. Howser, 422 S.E.2d 106, 107 (S.C. 1992), the plaintiff was initially bumped by another vehicle from behind. The other driver pulled up along side her, yelled at her to roll down her window, and then shot her as she turned to avoid the assault. The Howser Court applied an expansive test, stated as "something less than proximate cause and something more than the vehicle being the mere site of the injury," and found a sufficient causal connection between the use of the vehicle and the plaintiff's injury. Id. at 108. The Wendell Court cited the Howser Court's reasoning as follows:

> In the case at bar, it is apparent that the unknown vehicle was an active accessory to this assault. This is not a case in which the assailant merely used the vehicle to provide transportation to the situs of the shooting . . . . Nor is it a case where the assailant happened, incidentally, to be sitting in a stationary vehicle at the time of the attack. Only through use of his vehicle was the assailant able to closely pursue Howser, thereby enabling him to carry out the pistol assault. The gunshot was the culmination of an ongoing assault, in which the vehicle played an essential and integral part.

Wendell, ¶ 46 (quoting Howser, 422 S.E.2d at 108).

Applying the Howser rationale to the instant case, the connection between the truck and the murder is too remote and tenuous to trigger uninsured motor vehicle liability. Shepard's truck was only used for transportation to the site of the murder.

-6-

It was not an active accessory used for assault or pursuit.

Another method of conceptualizing the Wendell test is to consider whether or not the accident could have occurred without the use of the vehicle. In State Farm Mutual Automobile Ins. Co. v. Ferrin, 2002 MT 196, ¶¶ 4-6, 311 Mont. 155, ¶¶ 4-6, 54 P.3d 21, ¶¶ 4-6, the plaintiff traveled in the defendant's vehicle on a hunting trip, and the plaintiff was injured when he fired the defendant's negligently loaded rifle 25-50 yards away from the truck. The Montana Supreme Court held that the Wendell test applied, even though the policy in question was not an uninsured motor vehicle policy and used the phrase "resulting from" rather than "arising from." Id. ¶ 20. However, the Court held that the insurer was not liable for the plaintiff's injury because

> . . . the accident could have occurred in any location, regardless of where the rifle was stored or how the hunters reached their destination. The fact that the truck was used to transport the hunters and assist in the hunt simply provides no connection between the use of the truck and the explosion of the rifle. Had Alan walked to the hunt carrying the rifle or engaged in target practice in his backyard, the rifle still would have exploded.

Id. ¶ 28.

Here, Steven's kidnaping and murder may have been more difficult without the use of a vehicle, but it was possible for Shepard to murder Steven without using her truck. State Farm correctly points out that Steven was controlled by Shepard and her accomplices, not by the truck. The truck's status as the site of the actual shooting is incidental to the murder. The

truck was parked at the time, and Shepard could have fired the shot at any location. The only connection between the murder and the truck is the use of the truck for transportation, and this connection is too remote or tenuous to trigger uninsured motor vehicle liability.

The Wendell test and similar expansive approaches are intended to extend coverage when an accident has a vehicular origin, but the ultimate injury occurs from some means other than the vehicle itself. In all of the cited cases where the courts have found liability under the expansive test, the injury causing incidents arose between two motorists and involves some use of the vehicle to pursue, bump, or block the victim's vehicle. In contrast, Steven's abduction originated when Shepard and her accomplices entered his house on foot and seized him. Neither party was acting as a motorist at the time of the incident.

### D. Legal Entitlement Policy Language

Ash argues that the policy language creates an ambiguity or conflict. Ash's uninsured motor vehicle policy states:

> We will pay damages for *bodily injury* an *insured* is legally entitled to collect from the owner or driver of an *uninsured motor vehicle*. The *bodily injury* must be sustained by an *insured* and caused by accident arising out of the operation, maintenance or use of an *uninsured motor vehicle*.

Ash argues that the first sentence creates the expectation that UM coverage is available for any claim that the insured is legally entitled to recover for, and conflicts with the second

sentence which limits the circumstances under which the insured can recover.

An insurance contract may be ambiguous "when the contract taken as a whole in its wording or phraseology is reasonably subject to two interpretations." Wendell, ¶ 14. The wording should be interpreted according its "usual common-sense meaning as viewed from the perspective of a reasonable consumer of insurance products." Id. Taken together, the wording of the contract is not ambiguous. The second sentence merely modifies the first. Moreover, a reasonable consumer of insurance products is unlikely to believe that uninsured motor vehicle coverage would apply to any action taken by the owner or driver of an uninsured vehicle, regardless of any relationship to the vehicle. The two sentences are not in conflict and are subject to only one reasonable interpretation.

## V. Conclusion

The parties do not dispute any genuine issues of material fact, therefore judgment as a matter of law is appropriate. Applying the Wendell test, Steven Ash's murder did not arise from the use of an uninsured vehicle because it did not originate from, grow out of, or flow from the use of Shepard's uninsured vehicle. Instead, the murder arose from his abduction in retaliation for steeling drugs and was unrelated to any vehicle use, operation or maintenance.

Accordingly, IT IS HEREBY ORDERED that Defendant's Cross Motion for Summary Judgment **(dkt #18)** is GRANTED. The Clerk of Court is ordered to enter judgment by separate order and notify the parties of the entry of this order.

Dated this ____ day of November, 2005.

_____
Donald W. Molloy, Chief Judge
United States District Court